**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ROGER CARMAN,

                 Plaintiff,

vs.                                        Case No. 3:15-cv-1293-J-JRK

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                 Defendant.

_____/

## OPINION AND ORDER[2]

### I.  Status

       Roger Carman ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is a result of "Extreme Acute Nausea," "Extreme Abdominal Pain," "Diverticulitis," "Gastroesophogeal[ R]eflux Disease (GERD)," "Extremely Painful Hiatal Hernia," "Severe Anxiety," "Arthritis/Joint Pain," "Carpal Tunnel Syndrome," "Osteoperosis," and "Back Pain." Transcript of Administrative Proceedings (Doc. No. 6; "Tr." or "administrative transcript"), filed January 11, 2016, at 74-75, 86, 199.  Relevant to the instant appeal, Plaintiff explains the following regarding his alleged inability to sustain work:

---

[1]      Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn W. Colvin as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 7), filed January 11, 2016; Reference Order (Doc. No. 8), entered January 12, 2016.

> While [Plaintiff] experiences numerous impairments that impact his ability to sustain work activity, his claim for benefits rests primarily on the significant limitations imposed by his gastrointestinal disorders and the fact that these impairments worsened to such a degree that he could no longer engage in competitive work on an 8 hour a day, 5 day a week basis.

Memorandum in Support of Plaintiff's Appeal of the Commissioner's Decision (Doc. No. 12; "Pl.'s Mem."), filed March 10, 2016, at 6 (citation omitted).

On September 5, 2013, Plaintiff filed an application for DIB, alleging an onset disability date of March 22, 2013. Tr. at 164-65.[3] Plaintiff's application was denied initially, see Tr. at 74-84, 85, 103-06, and was denied upon reconsideration, see Tr. at 86-99, 100, 108-13. On June 23, 2015, an Administrative Law Judge ("ALJ") held a hearing, during which the ALJ heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 32-73. At the time of the hearing, Plaintiff was fifty-two (52) years old. Tr. at 35. The ALJ issued a Decision on July 14, 2015, finding Plaintiff not disabled through the date of the Decision. Tr. at 11-26. After the ALJ's Decision was issued, the Appeals Council received from Plaintiff, and incorporated into the administrative transcript, some additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 4-5; see Tr. at 293-95 (brief). On October 15, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On October 29, 2015, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[3] Although actually completed on September 5, 2013, see Tr. at 164-65, the filing date of the application is listed elsewhere in the administrative transcript as March 11, 2013, Tr. at 74, 86.

Plaintiff raises two issues on appeal: 1) whether the ALJ erred in evaluating the opinion of treating physician Thomas L. Ramey, M.D., and 2) whether the ALJ erred in evaluating a 100% disability rating assigned by the Department of Veteran's Affairs ("VA"). See Pl.'s Mem. at 1-2 (issue statements), 5-17 (argument as to issue one), 17-25 (argument as to issue two).   On May 9, 2016, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 13; "Def.'s Mem.") addressing the issues raised by Plaintiff.   Then, with leave of Court (Doc. No. 15), Plaintiff on December 13, 2016 filed Plaintiff's Reply Memorandum and Filing of Supplemental Authority (Doc. No. 16; "Reply"). After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[4]    "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ proceeded through step four, where his inquiry ended based on his step four finding.  See Tr. at 13-26.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since March 11, 2013, the alleged onset date."  Tr. at 13 (emphasis and citation omitted).  At step two, the ALJ found that "[Plaintiff] has the following severe impairment: gastrointestinal disorders."  Tr. at 13 (emphasis and citation omitted).  At step three, the ALJ ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 CFR [§] 404.1567(a), except [Plaintiff] has the ability to lift 10 pounds occasionally. [Plaintiff] can push and/or pull as much as he can lift.  He can sit for up to six hours in an eight-hour workday. [Plaintiff] can stand and/or walk for up to six hours, with normal breaks, in an eight-hour workday.  He has a good ability to read, write, and use numbers. [Plaintiff] is precluded from bending, stooping, or riding in an automobile for more than ten minutes at a time.

Tr. at 18 (emphasis omitted).  At step four, the ALJ found that "[Plaintiff] is capable of performing past relevant work as a Manager, Traffic" because "[t]his work does not require the performance of work-related activities precluded by [Plaintiff's RFC]."[5]  Tr. at 25

---

[5]   Plaintiff also has past relevant work as a "Material Coordinator" and in "Insurance Quality Assurance."  Tr. at 26.

(emphasis and citation omitted).  Based on the finding at step four, the ALJ did not proceed to step five.  See Tr. at 26.  The ALJ concluded that Plaintiff "has not been under a disability . . . from March 11, 2013, through the date of th[e D]ecision."  Tr. at 26 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

The issues raised by Plaintiff in this appeal are addressed in turn.

### A.  Opinion of Treating Physician

Plaintiff contends the ALJ erred in discounting the opinion of Dr. Ramey, one of Plaintiff's treating physicians.  Pl.'s Mem. at 1, 5-17.  According to Plaintiff, ALJ's stated reasons do not amount to the requisite "good cause" for discounting a treating physician's opinion and are otherwise unsupported by substantial evidence.  See id. at 14-17.  Plaintiff also contends that the ALJ erred in neglecting to consider the factors set forth in the Regulations for determining the weight to afford a treating physician's opinion.  See id. at 15-16.  Responding, Defendant contends that "[t]he ALJ's decision to give Dr. Ramey's opinion little weight was supported by substantial evidence, including the objective testing, Plaintiff's conservative treatment, Plaintiff's work history, and the opinion of the [non-examining] state agency physician."  Def.'s Mem. at 4.

The Regulations establish a "hierarchy" among medical opinions[6] that provides a framework for determining the weight afforded to each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists."  McNamee v. Soc. Sec. Admin., 164 F. App'x

---

[6]      "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."   20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician).  Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing

---

[7]     A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

"good cause" for discounting it.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion.  See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive").  While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005).  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)); see also Cranford v. Comm'r of Soc. Sec., No. 6:13-cv-415-Orl-GJK, 2014 WL 1017972, at *4 (M.D. Fla. Mar. 17, 2014) (unpublished) (stating that "[w]eighing the opinions and findings of treating, examining, and non-examining

physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability").

Here, Dr. Ramey has treated Plaintiff since at least June 2011. <u>See</u> Tr. at 336.  On July 25, 2013, Dr. Ramey wrote a letter in which he detailed Plaintiff's impairments and their effects:

> [Plaintiff] is a patient who has been under my care for many years with history of hemicolectomy for complicated diverticulitis, chronic abdominal pain and nausea, which has been worsening in the last several years, gastroparesis, gastroesophageal reflux disease, hypertension, dyslipidemia, chronic chest pain with several previous negative cardiac workups, headaches with prior negative brain MRI, chronic sinusitis and anxiety.  He underwent left hemicolonectomy for diverticulitis in 1995, and has had recurrent abdominal pain since, but significantly more over the last year.  Symptoms have been LLQ and epigastric abdominal pain associated with bloating, nausea, sweating and dizziness.  At times he has been treated for features (diarrhea, localized tenderness) suggestive of viral or diverticular infections, but symptoms have recently been relapsing almost daily, about half of episodes accompanied by severe headache.  He feels severely weak and nauseated, symptoms are not relieved with nausea medications (Phenergan or Zofran), and he only gets relief by going to bed.  He is chronically anxious, and medication therapy for anxiety has not relieved his symptoms.  He has undergone an extensive gastroenterology evaluation by Dr. Dinesh Madhok in Orange Park, Florida, which has confirmed delayed gastric emptying.  Colonoscopy this year was unremarkable s/p hemicolectomy, gastroscopy in 2009 showed a hiatal hernia.
>
> He has missed extensive amounts of work (18% of work days in 2012 and 26% of days in January and February of this year per his work records).  He has received extensive amounts of donated sick leave from co-workers, and is no longer able to do so.  I believe his abdominal symptoms are related to gastroparesis, acid reflux and chronic postoperative pain causing nausea poorly responsive to standard medical treatment with proton pump inhibitor for acid suppression and antiemetics for nausea, further complicated by moderately severe underlying anxiety, which has not improved with treatment with SSRI type antidepressants.  Stress related to work and concern over his employment situation have been a significant aggravating factor for his anxiety and abdominal symptoms.  At this point, he is unable to maintain gainful employment due to excessive absenteeism related to his ongoing symptoms.  I do not expect this to improve in the foreseeable future.

Tr. at 313.[8]  Then, on January 22, 2015, Dr. Ramey provided an updated letter that, in addition to the foregoing, indicates Plaintiff "has had continued abdominal symptoms," as well as "worsening lumbar pain and right lower extremity radiculopathy related to Lumbar Spondylosis, for which he is being referred to pain management." Tr. at 465.  Dr. Ramey reaffirmed his previous opinion that Plaintiff "remains unable to maintain gainful employment due to excessive need for absenteeism related to his ongoing symptoms." Tr. at 465.

The ALJ recognized these letters, but afforded them "[l]ittle weight" for the following reasons: they "lack[] specific functional limitations, [are] vague, and [are] inconsistent with [Dr. Ramey's] conservative treatment of [Plaintiff]." Tr. at 23.  The ALJ did not elaborate on these reasons.  To the extent the ALJ merely recited a recognized "good cause" reason for discounting Dr. Ramey's opinion, the ALJ failed to meet the requirement of particularity in rejecting a treating physician's opinion.  See Winschel, 631 F.3d at 1179; Gayler v. Astrue, No. 5:07-cv-121-Oc-GRJ, 2008 WL 4327050, at *6 (M.D. Fla. Sept. 18, 2008) (unpublished) (reversing and remanding ALJ's decision to discount a treating physician's opinion when "the ALJ failed to explain or even provide a clue as to how [the treating physician's] opinion was inconsistent with other record medical evidence"); Russ v. Astrue, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *10 (M.D. Fla. Mar. 20, 2009) (unpublished) (finding an ALJ's "dismissal" of a treating physician's opinion was "deficient" when the ALJ noted the opinion "was 'not supported by objective findings,'" but did not provide any explanation for the reason) (quoting ALJ's Decision).

---

[8]     The more legible but unsigned "chart copy" of this letter is located in the administrative transcript on page 327.

Moreover, without sufficient explanation by the ALJ why he rejected Dr. Ramey's opinion, the undersigned is not able to determine whether the reasons for rejection are supported by substantial evidence.  For instance, the ALJ found the doctor's opinion to be "vague," Tr. at 23, but, as quoted above, the letters contain significant detail about Plaintiff's impairments, Dr. Ramey's impressions of them, and the symptoms from which Plaintiff suffers.  So, to the extent the ALJ finds the opinion "vague," Tr. at 23, the undersigned is not able to determine why.

Further, the ALJ found the opinion "lacks specific functional limitations."  Tr. at 23. While this statement technically may be accurate, one would not expect specific functional limitations to be included in the letters.  This is because Dr. Ramey does not link Plaintiff's unemployability to Plaintiff being unable to perform certain basic work activities as is typically the case.  See 20 C.F.R. § 404.1521(b) (listing those activities).  Instead, Dr. Ramey focuses on the unpredictable nature of Plaintiff's symptoms and his "excessive absenteeism" from work as a consequence of suffering from those unpredictable symptoms.[9]  Tr. at 313.

Dr. Ramey's observation that Plaintiff was the recipient of donated sick leave and his reliance on the excessive absenteeism is supported by Plaintiff's employment records in the administrative transcript.  See Tr. at 178-87, 315-25.  In summarizing Dr. Ramey's opinion, the ALJ recognized the doctor's observation that Plaintiff missed a number of days of work in 2012 and 2013.  Tr. at 23.  Elsewhere in the Decision, the ALJ summarized the information in Plaintiff's work leave records.  Tr. at 20-21.  But, the ALJ did not address Dr.

---

[9]    It is commonly accepted that an individual must generally be able to work eight hours per day and five days per week to sustain work in an ordinary setting.  See, e.g., Social Security Ruling 96-8P, 1996 WL 374184, at *1.

Ramey's important observation in later discounting the opinion. Tr. at 23; see 20 C.F.R. § 404.1529(c)(3) (directing consideration of "information about [an individual's] prior work record"). Because of the ALJ's failure to articulate with particularity the reasons for discounting Dr. Ramey's opinion, the undersigned is unable to determine whether the ALJ properly considered the supportability of Dr. Ramey's opinion, as the ALJ was required to do. See 20 C.F.R.§§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

For all of the foregoing reasons, remand is required for the ALJ to reconsider Dr. Ramey's opinion. If discounted, the ALJ must explain why with sufficient particularity.

## B. VA Disability Rating

Plaintiff next contends the ALJ erred in summarily rejecting the VA's 100% disability rating. Pl.'s Mem. at 17-24; see generally Reply. Defendant responds that the VA disability rating was properly weighed and is not binding on the Social Security Administration. Def.'s Mem. at 9-10.

"'Although the V.A.'s disability rating is not binding on the [Commissioner of the Social Security Administration], it is evidence that should be given great weight.'" Brady v. Heckler, 724 F.2d 914, 921 (11th Cir. 1984) (quoting Olson v. Schweiker, 663 F.2d 593, 597 n.4 (5th Cir. 1981));[10] see also 20 C.F.R. § 404.1504. Here, the VA determined that Plaintiff has a number of specific disability ratings, Tr. at 287-90, and as of April 22, 2014, Plaintiff has been unemployable "as a result of service-connected disabilities." Tr. at 288. The VA, therefore,

---

[10] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit that were rendered prior to the close of business on September 30, 1981.

-12-

pays Plaintiff disability "at the 100 percent rate because [he is] unemployable." Tr. at 176. The ALJ recognized these findings and assigned them "some weight." Tr. at 20. The given reason for doing so was that "different standards apply [to the Social Security Administration] regarding disability determination." Tr. at 20 (citations omitted). There are no other reasons provided for assigning the opinion "some weight." Tr. at 20.

The ALJ erred in addressing the VA disability rating. "It is not disputed that the VA's 'disability' determination relies on a different criteria than the [Social Security Administration's] determination. But that does not mean that the ALJ can summarily ignore the VA's determination nor give it 'little weight.'" Brown-Gaudet-Evans v. Comm'r of Soc. Sec., ___ F. App'x ___, 2016 WL 7157976, at *1 (11th Cir. Dec. 8, 2016) (unpublished) (reversing and remanding for proper consideration of a VA 100% unemployability rating). Thus, remand is required for further consideration of the VA disability rating. Although the ALJ on remand "is not required to give the VA's disability determination controlling weight . . . the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination." Id. (citation omitted).

### V.  Conclusion

After due consideration, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reevaluate the opinion of Dr. Ramey, stating with particularity the weight assigned and the reasons for that weight;

(B)    Reevaluate the VA's disability rating, ensuring that it is closely scrutinized and, if discounted, provide specific reasons for doing so; and

(C)    Take such other action as may be necessary to resolve this matter properly.

2.    The Clerk is further directed to close the file.

3.    In the event benefits are awarded on remand, Plaintiff's counsel shall ensure that any § 406(b) fee application be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**DONE AND ORDERED** at Jacksonville, Florida on March 10, 2017.

*James R. Klindt*

**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:
Counsel of record